

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

SK:TJS/MKP
F. #2014R01914

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 18, 2018

<u>By Hand and ECF</u>

The Honorable Pamela K. Chen
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:   <u>United States v. Jennie Lemay</u>
                <u>Criminal Docket No. 14-189 (S-3) (PKC)</u>

Dear Judge Chen:

      The government respectfully submits this letter in advance of sentencing in the above-captioned case, which is scheduled for July 20, 2018.  On September 8, 2017, the defendant pleaded guilty to Count One of the third superseding indictment.  In her plea agreement, the defendant and government agreed, pursuant to Federal Rules of Criminal Procedure Rule 11(c)(1)(C), that she should be sentenced to at least 10 years' imprisonment.  For the reasons set forth below, including the seriousness of the defendant's crimes, the government asks that the Court impose a sentence of imprisonment between 168 to 210 months.

I.      <u>Background</u>

      The defendant first came to the attention of law enforcement following the arrest of Alberto Randazzo.  (Pre-Sentence Investigation Report ("PSR") ¶ 24).  A review of Randazzo's electronic devices revealed numerous communications with the defendant about the sexual exploitation of children.  (<u>Id.</u>)  In or around July 2011, the defendant and Randazzo prearranged Skype video calls where they planned to have Lemay sexually abuse an eight-year-old while the defendant watched.  (PSR ¶¶ 26-29.)  Although the government is not in possession of videos of those calls, the defendant and Randazzo engaged in a real-time exchange of messages while they were on some of the video calls.  These exchanges reveal that during at least one video session the defendant attempted to simulate performing oral sex on the victim using a popsicle.  When the victim refused to cooperate, Randazzo became frustrated and wanted her to continue trying.  In a post-arrest statement, the defendant also confessed to simulating sexual intercourse with the victim over Skype and touching his penis over his underwear.

The defendant and Randazzo were also in communication in or around September 2011 and discussed meeting in person. On or about September 10, 2011 Randazzo said to the defendant, "I get off at midnight. I can leave NYC at midnight and be there at like 3 or 4am." (PSR ¶ 30.) The defendant responded, "Yes baby that works . . . [c]ome to my back door and slip inside the sliding glass door. . . . Slip into bed with me and [the victim]." Randazzo said, "Ok that would be great. But are you sure you can suck his cock without him waking up? . . . I would want you to give him Nyquil anyway. This way he's sleeping and you can move him around etc." Later that night, when the plan to meet that night appeared to have been abandoned, Randazzo said to the defendant, "Ok so I hear that melatonin is an over the counter sleeping pill that will knock [the victim] out for the night. We can have all the fun we want then ;)." The defendant responded, "Oh cool. . . What form is it? A pill?" and Randazzo said, "Yes I think so. Would that be okay? You can tell him it's a vitamin. I hear it will make him sleep all night. Maybe we can have a skype session soon and try the pill out." On or about September 14, 2011 Randazzo asked the defendant, "What will you show me on skype mommy?" and she responded, "What I will do with you baby. How I will suck you and [the victim]." (PSR ¶ 31.) On or about September 18, 2011, the defendant said to Randazzo, "I will give him something with his meds. . . . I will let you know as soon as he's asleep."

On or about April 18, 2012, the defendant and Randazzo met in a hotel room with the victim and gave him Ambien and alcohol so that Lemay could sexually abuse the victim while Randazzo filmed it. Prior to the meeting the defendant and Randazzo had discussed medicating the victim so that he would sleep through any sexual abuse. In her post-arrest statement, the defendant acknowledged bringing the victim to the hotel and giving him Ambien and alcohol, and she also said that the defendant brought a camcorder to the hotel. While Lemay maintains that no sexual abuse actually took place at the hotel, the victim has been forensically interviewed and remembers going to a hotel room with Lemay and a man, being drugged and waking up wearing different pants than he had gone to sleep wearing.

███████████████

Contrary to the defendant's hopes that the victim would not remember any abuse, the victim does have a memory of these events. In a forensic interview[1] (a video is attached as Exhibit 1), the victim recalled being at the hotel with Lemay and Randazzo. He stated that Lemay gave him a pill that made him feel tired. (Ex. A at timestamp 10:33:30.) He said that he was wearing jeans clothes when he went to sleep, but woke up wearing sweatpants. (Ex. A at timestamp 10:53:00.) He also stated that he fell asleep on the bed and woke up on a futon in the hotel room. (Ex. A at timestamp 10:40:00.) In addition, when he

---

[1] The victim made these statements during his second forensic interview. During his first forensic interview, he indicated that he did not have any memory of these events.

2

woke up, he saw a camera on a tripod that had been set up after he fell asleep. (Ex. A at timestamps 10:55:50, 11:08:40.)

The defendant was arrested on July 7, 2015 pursuant to a complaint charging her with conspiring, with Alberto Randazzo, to sexually exploit a child. Subsequently, on October 19, 2015, the grand jury returned a superseding indictment, charging her with the same. On August 24, 2015, the Court agreed to the defendant's pretrial release to home detention on a $300,000 bond secured by a $15,000 cash deposit, a property owned by the defendant and a property owned by her sister. On August 3, 2016, a bond revocation hearing was held as to the defendant after she violated her pretrial release conditions by attending a Broadway show and visiting Foxwoods Casino without the permission of Pretrial Services. The Court did not remand the defendant, but warned the defendant that any future violation would result in her arrest and revocation of her bond.

The defendant subsequently violated the conditions of her release by creating and using a Facebook account with a pseudonym "Molly Mansion." The defendant used this account in connection with internet shopping and communication with a minor. After the government identified this account and informed Pretrial Services, a Pretrial Services Officer confronted the defendant. The defendant then lied. She told the Pretrial Services Officer that she had not accessed the internet since being released on bail and that she had never heard of "Molly Mansion." Following the Pretrial Service Officer's questions, the defendant deleted the "Molly Mansion" account. The defendant's bail was subsequently revoked following a hearing on June 29, 2017.

II.   Guidelines Calculation

In her plea agreement, the government estimated the defendant's total adjusted offense level to be 35, which carries a Guidelines range of imprisonment of 168 to 210 months with a Criminal History Category of I.

On December 21, 2016, the Probation Department released the PSR, which calculated the total offense level as 39. The government believes that the Probation Department's inclusion of an enhancement for distribution is incorrect. While the defendant undoubtedly engaged in explicit conversation by text message and Skype with Randazzo regarding the sexual exploitation of the victim and also engaged in video conversation, the government does not believe that it can prove that these videos meet the statutory definition of child pornography. The government does agree that the Probation Department correctly included an enhancement because the offense involved sexual contact. Accordingly, the government believes that the total adjusted offense level should be 37. This results in an advisory Guidelines range of 210 to 262 months' imprisonment. Regardless of this range, the government nonetheless advocates for a sentence within the range it calculated in the plea agreement, 168 to 210 months.

III.  A Sentence of Imprisonment Between 168 and 210 Months is Appropriate in Light of 18 U.S.C. § 3553(a) Considerations

   A.  Legal Standard

The Sentencing Guidelines are advisory, not mandatory.  United States v. Booker, 543 U.S. 220, 258-60 (2005).  In Booker, the Supreme Court held that sentencing courts must consider the Guidelines in formulating an appropriate sentence.  Id.  In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court set forth the procedure for sentencing courts to follow in light of Booker:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.

Gall, 552 U.S. at 49 (citation omitted) (emphasis added).  Next, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  Title 18, United States Code, Section 3553(a) provides in pertinent part:

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set for in paragraph (2) of this section.  The court, in determining the particular sentence to be imposed, shall consider:
>
> (1) the nature and circumstances of the offense . . . ;
>
> (2) the need for the sentenced imposed --
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; [and] . . .
>
> (D) to provide the defendant with needed educational or vocational training; medical care, or other corrections treatment in the most effective manner; . . . .

   B.  Appropriate Sentence

The defendant's crimes can be measured both by the serious nature of the acts themselves and the severity of their consequences for her victim.  At their core, the defendant's crimes are about the abuse of someone she should have been protecting.

4

Lemay offered the victim up for abuse in order to sexually entice Alberto Randazzo into her bed.

This was not the product of one bad decision, but a course of conduct that the defendant engaged in over months. After meeting Alberto Randazzo via an internet dating site, Lemay communicated with him for almost a year until they met in person at a hotel in Massachusetts. From early on, it was clear to the defendant that Randazzo was interested in seeing her sexually abuse the victim. Lemay was more than happy to participate in these conversations. Even the month they began communicating, Lemay was sending Randazzo explicit messages about how she could sexually abuse the victim, some of which she initiated when trying to attract Randazzo's attention.

These conversations escalated to video chats and discussions about drugging the victim. They culminated with a meeting at a Massachusetts hotel. As set forth above, the evidence supports the conclusion that Lemay and Randazzo went through with their plan and drugged and sexually abused the victim.



hile the defendant may have intended for the victim to be unaware of the abuse, her actions have caused grave injury to the victim that should be taken into account in her sentence.

A sentence within the range of 168 to 210 months' imprisonment is appropriate. That sentence reflects the serious nature of this offense and its long-lasting harm. It would also be sufficient to deter others who might seek to abuse children in their care to entice sexual partners.

IV.   Restitution

V.   Conclusion

For the foregoing reasons, the government asks that the Court impose a sentence of imprisonment within the range of 168 to 210 months. This sentence is sufficient but not greater than necessary to meet the aims of § 3553.

VI.     Sealing

The government respectfully requests that this unredacted letter be filed under seal. The government's letter necessarily identifies the minor victim in this case. The Crime Victims' Rights Act recognizes a victim's "right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771. In addition, the Second Circuit has recognized that the privacy interests of third parties may justify sealing. United States v. Amodeo, 71 F.3d 1044, 1050-51 (2d Cir. 1995) (privacy interests of third parties may be compelling reason justifying sealing).

Under these circumstances, the interest of the victim's privacy outweighs the public's qualified right to access. As the facts set forth above provide support for the "specific, on the record findings" necessary to support sealing, Lugosch v. Pyramid Co., 435 F.3d 110, 120 (2d Cir. 2006), the government respectfully requests that the Court record those findings and file this letter under seal.

The publicly filed government memorandum redacts information that identifies the victim.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:     /s/
        Tyler J. Smith
        Moira Kim Penza
        Assistant U.S. Attorneys
        (718) 254-6186/6454

cc:     Julie Rendelman, Esq. (by Encrypted Email)
        Angelica Deniz (Probation Department) (by Encrypted Email)